UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLO GARCIA, | No. C 09-5369 SI (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| GARY SANDOR, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2006, petitioner was convicted by a Santa Clara County Superior Court jury of two counts of sexual assault of a child under the age of 14, consequent to which petitioner was sentenced to 30 years-to-life. Evidence presented at trial demonstrated that in 2002 petitioner, who weighed 400 to 500 pounds at the time, sodomized his friend's daughter, Jasmine, when she was 5 or 6, while he babysat her. Petitioner was denied relief on state judicial review. This

federal habeas petition followed.

As grounds for federal habeas relief, petitioner claims that (1) the prosecutor's committed misconduct by misstating the law; (2) there was insufficient evidence to support the jury's determination that the offenses were committed by force or duress; (3) admission of uncharged prior sex offenses violated his right to a fair trial; (4) the CALCRIM 1191 jury instruction violated his rights to due process and proof beyond a reasonable doubt;[1] and (5) the CALCRIM 220 jury instruction is constitutionally defective.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court

---

[1] Petitioner erroneously gives CALCRIM 852 as the relevant instruction. (Pet. at 7.)

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

**1.     Prosecutor's Statement of the Law**

The prosecutor stated the following in his rebuttal statement:

> [Defense counsel] commented these are difficult cases to try. They are even more difficult cases to defend. And the reason why it's a difficult case to defend and the defense is in a very difficult posture is because in any criminal case, there are only so many defenses available.
>
> For example, one defense could be identity . . . But when she's identifying her assailant as someone who is known to her, that is a defense that is effectively unavailable . . .
>
> Another defense could be that, yes, there was touching but it wasn't sexual touching . . . But that defense doesn't work here because there can be nothing innocent about the conduct described by Jasmine.
>
> Another defense could be yes, it all happened exactly they way Jasmine said it did, but it was consensual or, in other words, it was non-forcible . There was no force. There was no duress. This [child] was a willing participant . . .

(Ans., Ex. H, Vol. 9 at 1314–15.) Defense counsel objected on grounds that consent was not a defense or an issue in this case. (*Id.* at 1315.) The trial court overruled the objection, and reminded the jury that it was to adhere to the law as given by the court, and to reject any contradictory instructions given by counsel. (*Id.*) The state appellate court described petitioner's lengthy objection to the prosecutor's comments as follows:

> According to [petitioner], the vice of these comments, and of the trial court's failure to correct them, was that it left the jury 'with the impression that the prosecutor's argument was not legally incorrect, and that the determination whether the sodomy was forcible or nonforcible turned on the question whether Jasmine consented.' Further, 'the prosecutor's inflammatory argument that rejection of the greater offense and a true finding on the lesser was the same as a finding that Jasmine wanted to be sodomized, and the court's apparent imprimatur of that argument, virtually guaranteed that the jury would find that the sodomy

3

> was committed by force and that would reject a conviction of nonforcible sodomy' because the jury would have recoiled from appearing to endorse the idea that a six-year-old girl wanted to be sodomized.

(*Id.*, Ex. E at 31.) The state appellate court disagreed with petitioner's interpretation, and rejected his claim:

> We do not think there is a reasonable likelihood that the jury understood the prosecutor's comments [in the way petitioner describes]. In our view, the prosecutor's earlier comments were intended only to outline the range of defenses available to a defendant facing sexual assault charges, with a view toward pointing out the circumstances under which those defenses would be implausible or unavailable. That this appears to have been the point the prosecutor was attempting to make is clear from his comments after the objection: he pointed out that even if consent were the proffered defense, it would not be the ideal defense in a case of child sexual abuse because the defendant would still be guilty of a lesser, nonforcible offense. Unspoken but implicit in this argument is the recognition that consent is not a defense to commission of any sexual act upon a child under the age of 14, as the court had clearly instructed the jury. In this respect, then, defense counsel's objection merely stated the obvious, and the court did not err by deflecting the objection by reminding the jury that just in case a juror saw a conflict between the prosecutor's comments and the court's instructions, the court's instructions governed.

(*Id.* at 31–32.) The state appellate court also rejected any finding of prejudice:

> The comments were brief and oblique and the court's instructions on consent could not have been clearer. Further, the evidence . . . was compelling on the point that where child sexual abuse is concerned, acquiescence is not the equivalent of "consent," which cannot be given by a child in any event.

(*Id.* at 32.)

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness so that there was a due process violation. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). In order to prevail on federal habeas review, the prosecutor's misconduct must have resulted in prejudice, that is, the misconduct must have had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

4

Petitioner is not entitled to habeas relief on this claim. The state court reasonably determined that there was no prosecutorial misconduct and that petitioner did not suffer prejudice. As to the first point, a review of the record shows that the prosecutor was merely listing what common sense defenses might be available in sexual assault cases and showing how such defenses were not available to petitioner. As these were correct statements of the law — and law already given by the trial court — the state appellate court reasonably rejected petitioner's assertion that the prosecutor committed misconduct. As to the second point, there has been no showing of prejudice. The trial court gave the jury correct instructions on the law, and admonished the jury that the court's instructions governed above any others. Jurors are presumed to follow the trial court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Accordingly, petitioner's claim is DENIED for want of merit.

## 2. Sufficiency of Evidence of Force and Duress

Petitioner claims that his sodomy convictions are unconstitutional because there was insufficient evidence of the elements of (A) force or (B) duress. The statute requires a finding that the act of sodomy (defined in Cal. Penal Code § 286) was committed by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." *Id.* § 268.

At trial, Jasmine testified about the first time petitioner sodomized her. After obeying his instructions to disrobe and lie face down on his bed,

> [Petitioner] gave her a pillow and told her to scream into it if she had to scream. She took the pillow. She didn't know what to do. She was confused. No one had ever told her to do anything like that before and she could not understand why he was doing so. Next, [petitioner] got on the bed and leaned over her. He was on his knees, straddling her body, with one knee on one side of her leg and the other knee on the other side. He moved her body a little bit towards the bedroom wall with his hand on her hip. She also felt his arm rub against the side of her stomach.
>
> She heard a zipper and tried to look back, but [petitioner] told her to turn around. When she turned around she started to feel his penis go into her 'butt.' She believed it was his penis because of the position of his body and the sound of the zipper. The object that entered her anus was hard and wet and it hurt her. She once more tried to turn around to see what was causing her pain but [petitioner] yelled at her again and told her not to look. So she put her head into the pillow

5

and screamed because it hurt.

Before she buried her head in the pillow, she saw that [petitioner]'s hand was close to her shoulder on the side of the bed. Sometimes she could feel the weight of [petitioner]'s body rubbing against her back. At times she also felt his knees on her legs.
. . . .

The ordeal lasted about10 minutes. After [petitioner] stopped, Jasmine heard the zipper again. Her bottom hurt and felt wet. [Petitioner] told her to pull up her pants and underpants. She did, and then tried to go out the door. But [petitioner] pulled her back and said that if she ever told anybody what had just happened, she would get into trouble for letting him do that to her, and he would get into trouble, too. He said this to her in that strict and mean tone of voice that he had never used with her before, 'and it scared me.' She did not know what kind of trouble she would be in, but she was afraid of what her mom would do.

At some point thereafter, Jasmine's mother and [petitioner]'s mother returned home. She did not tell her mother what had just happened because she believed [petitioner] and was scared that she would get into trouble for "letting it happen." She did go to the bathroom to cry.

[Petitioner] sodomized her between two and five more times during a one- to two-month time period. She could not explain in detail each molestation incident, but 'the same thing happened every single time' and she clearly remembered the first and last times he molested her.

(Ans., Ex. E at 3–4.)

### A. Force

The state appellate court found that there was sufficient evidence of force, and rejected petitioner's claim:

In *Griffin* [a state court case], the evidence that the [petitioner] pinned the victim's arms to the floor while he accomplished the sex act was deemed sufficient. Likewise, here, the evidence showed that [petitioner] (1) warned Jasmine that if she had to scream she was to do it in a pillow, which he handed to her; (2) put his hand on her hip and moved her body; (3) let his arm brush the side of her stomach and his stomach press down on her back; and (4) with his tremendous girth and strength straddled a five year old. From this evidence, a rational jury was entitled to conclude that [petitioner] used force to move Jasmine's small body in an effort to better accommodate it for his own comfort, and to gain Jasmine's submission to his will. This is sufficient evidence of force within the meaning of *Griffin*.

(*Id.* at 20.)

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982

F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, No. 11-1053, slip op. 7 (U.S. May 29, 2012).

In determining whether "force" was used, the question for the jury is whether a criminal defendant used force to accomplish a sexual act against the victim's will, " not whether the force he used overcame [the victim's] physical strength or ability to resist him." *People v. Griffin*, 33 Cal. 4th 1015, 1028 (Cal. 2004). "Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction." *Id.*

A rational juror could have found that petitioner used force to accomplish the sexual assault against Jasmine's will. As the state appellate court described, Jasmine testified that petitioner moved her body and pressed his adult weight against her five-year-old frame in order to sodomize her. On this record, the jury's finding was not so insupportable as to fall below the threshold of rationality. Accordingly, this claim is DENIED.

7

**B.     Duress**

This claim also fails. First, it is a moot question, as there was sufficient evidence of force. The statute requires a finding of one or the other, not both. Second, a rational juror could have found the element of duress beyond a reasonable doubt. Duress

> has been defined as a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.. . . [D]uress involves psychological coercion. Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes . . . Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim [are] relevant to the existence of duress.

*People v. Espinoza*, 95 Cal.App.4th 1287, 1319–1320 (Cal. Ct. App. 2002) (citations and quotation marks omitted).

A rational juror could also have found that petitioner psychologically coerced Jasmine through the use of threats and implied threats. There was ample evidence of this, as the state appellate court described:

> In this case, Jasmine was five years old and [petitioner] was more than 10 years her senior. During the crucial period of time, he was a trusted member of her extended family circle, even though he was not a blood relative. When no other adult was present to protect her, [petitioner] took advantage of her solitude and trust. He ordered her to take off her clothing. He ordered her to get on the bed. With his great bulk he straddled her and penetrated her anus, causing her to scream in pain.
>
> [Petitioner] took advantage of his position of authority as a trusted friend of the victim's mother and a member of the extended family circle, his superior size and heft, the age difference, and the victim's vulnerability in being left alone without anyone to come to her aid, to intimidate her into submission. We add to this the physical and psychological force of looming over this small child in a straddle, and [petitioner]'s warning her not to speak out, instilling in her the fear of punishment and shame for submitting to [petitioner]'s actions, and we have no trouble finding sufficient evidence of an implied threat of danger sufficient to constitute duress.

(Ans., Ex. E at 22.) In sum, petitioner's age, his greater size, his position of authority and trust, and his threats provided evidence from which a rational juror could have found that petitioner accomplished his crime by means of duress. This claim is DENIED.

### 3. Admission of Evidence of Prior Offenses

At trial, Sonya M., petitioner's cousin, testified that petitioner sexually molested her from the age of 3 to 17. Petitioner claims that admission of this evidence violated his constitutional rights because (A) it was prejudicial character or propensity evidence, and (B) the statute under which it was admitted, Cal. Evidence Code § 1108, is unconstitutional.

#### A. Character or Propensity Evidence

Petitioner's character evidence claim fails because no remediable constitutional violation occurred. First, the United States Supreme Court has left open the question whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). Because the Supreme Court has reserved this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Second, even if the evidence were irrelevant or prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Accordingly, petitioner's claim is DENIED.

#### B. Constitutionality of Section 1108

California Evidence Code section 1108(a) states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 [generally forbidding the use of character evidence to show action in conformity therewith], if the evidence is not inadmissible pursuant to Section 352 [which allows a trial court to exclude evidence if its probative value is outweighed by its prejudicial effect]." Petitioner bases his claim that court decisions upholding the constitutionality of § 1108 were wrongly decided. This is insufficient

to show that the statute is unconstitutional. Courts have "routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions." *United States v. LeMay*, 260 F.3d 1018, 1025 (9th Cir. 2001). "California's Rule 1108 was modeled after the Federal Rules, and contains an express requirement that courts balance the probative value of the evidence against its prejudicial effect." *Wolff v. Newland*, 67 Fed. Appx. 398 (9th Cir. 2003). This balancing requirement renders such state and federal rules "consistent with due process." *Mejia v. Garcia*, 534 F.3d 1036, 1047 n.5 (9th Cir. 2008). In the face of such authority, and because petitioner has not shown any persuasive or binding authority to support his position, the claim is DENIED.

### 4. CALCRIM 1191

Petitioner claims that the use of CALCRIM 1191 ("Evidence of Uncharged Sex Offenses"), the standard instruction regarding evidence admitted under § 1108, violated his right to due process because it allowed the jury to convict him based on his propensity to commit sexual offenses. The instruction, as given to petitioner's jury, reads:

> If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the aggravated sexual assault of a child as charged here, or the lesser offense of sodomy on a child or sexual penetration of a child. If you conclude the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of aggravated sexual assault of a child or any lesser crime. The People must still prove each element of every charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose.

(Ans., Ex. H, Vol. 9 at 1234–35.) Because such arguments have been routinely rejected by California courts, the state appellate court denied this claim. (*Id.*, Ex. E at 25.)

Petitioner's claim lacks merit. The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The disputed instruction did nothing to lower this standard of proof, and, in fact, reinforced the reasonable doubt standard:

1 "The People must still prove each element of every charge beyond a reasonable doubt." The
2 jury was also instructed on the reasonable doubt burden of proof with CALCRIM No. 220 and
3 on the elements of the underlying crimes. Because the disputed instruction did not fall afoul of
4 *Winship*, petitioner's claim is DENIED.

## 5. CALCRIM 220

Petitioner claimed on appeal and here that the reasonable doubt instruction, CALCRIM 220, was constitutionally deficient because

> it required the jury to 'compare' the evidence 'received' at trial. The jury could have only interpreted this as requiring it to compare the evidence presented by the prosecution with the evidence presented by the defense. This language allowed the jury to hold against [petitioner] his failure to present as much evidence on his behalf as the prosecution presented against him, or to present sufficient evidence to prove his innocence. This had the effect of impermissibly shifting the burden of proof to [petitioner].

(Ans., Ex. E at 26.) The state appellate court rejected this claim because this argument has been repeatedly rejected by California courts. (*Id.*)

The state court reasonably determined that the instruction comported with constitutional requirements. First, petitioner has not shown that it is reasonably likely the jury would have applied the instruction as he suggests. There is nothing in the instruction that relieves the prosecution of its burden to prove petitioner's guilt beyond a reasonable doubt. Second, the other instructions reinforce the appropriate standard of proof and the parties' burdens. For example, the jury was clearly instructed that it must presume petitioner innocent and that this presumption could be overcome only if the evidence proved him guilty beyond a reasonable doubt. (*Id.*, Ex. H, Vol. 9 at 1218.) If the evidence did not meet this standard, the jury was directed to acquit petitioner. (*Id.*) Also, the jury was specifically directed not to infer anything from petitioner's implicit assertion of his right to silence, viz., his not testifying at trial. (*Id.* at 1227–28.) Such instructions render unreasonable any assertion that the instruction relieved the prosecution of its burden, or placed any unconstitutional burden on petitioner. Third, the "comparison" argument was thoroughly rejected in an opinion from the Eastern District of

11

California:

> [M]any instructions emphasized that individual factual findings depended upon the consideration of multiple factors and did not reduce to a simple weighing process of evidence on a scale. The jurors were directed to consider specific factors in evaluating credibility, testimony, and conflicts in the evidence. They were specifically instructed that resolving conflicts in the evidence was not to be based on a simple count of the number of witnesses, but rather on a consideration of whether the specific evidence was convincing.

*Rojas v. Grounds*, No. 1:10–cv–01403–SKO–HC, 2012 WL 1604681 *20 (E.D. Cal., May 7, 2012.) Here, petitioner's jury received similar instructions that factual findings depended on many considerations, and that the process was not a simple weighing of evidence. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: June 13, 2012

_____
SUSAN ILLSTON
United States District Judge